1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT
9                      DISTRICT OF ARIZONA
10

11   Sidney Ryan, *et al.*,                    )
12              Plaintiffs,                     )    2:14-cv-01145 JWS
13        vs.                                   )    ORDER AND OPINION
14   Mesa Unified School District and          )    [Re: Motion at Docket 12]
     Joseph Goodman, in his individual         )
15   capacity,                                  )
16              Defendants.                     )
17   ─────────────────────────────────────────

18                      **I.  MOTION PRESENTED**

19        At docket 12, defendants Mesa Unified School District ("School District") and

20   Joseph Goodman ("Goodman") move pursuant to Federal Rule of Civil Procedure

21   12(b)(6) for an order dismissing plaintiffs' amended complaint.  Plaintiffs Sidney Ryan,

22   Jodi Ryan, and Jeffrey Hills respond at docket 14.  Defendants filed a reply at docket

23   17.  Oral argument was not requested and would not assist the court.

24                       **II.  BACKGROUND**

25        Sidney Ryan, K.R., and B.H. are three former members of the 2014 Mountain

26   View High School varsity girls softball team.  K.R. and B.H. are minors whose interests

27   are represented in this case by plaintiffs Jodi Ryan (K.R.'s mother) and Jeffrey Hills

28   (B.H.'s father), respectively.  Mountain View is a public high school in Mesa, Arizona

     that is part of the Mesa Unified School District.  Plaintiffs' complaint alleges four causes

of action pursuant to 42 U.S.C. § 1983.  Count I alleges a violation of the First Amendment's Establishment Clause against Goodman.[1]  Count II alleges a violation of the First Amendment's Establishment Clause and seeks declaratory and injunctive relief against the School District.  Count III alleges a violation of the First Amendment's Free Speech Clause against Goodman and the School District.  Count IV alleges a violation of the Fifth and Fourteenth Amendments' Due Process Clauses against Goodman and the School District.

**A.    Establishment Clause allegations**

**i.    Team prayer allegations (Count I)**

- Defendants allow and promote prayer at Mountain View varsity girls softball games.  During the 2013-14 girls softball season, certain players were appointed "prayer leaders" who led a team prayer at the beginning of every game.

- Team captain Sidney Ryan announced that these team prayers would cease.  K.R. and B.H. supported this decision.  All three players were dismissed from the team.  One of the reasons why they were dismissed from the team was that the School District found that they did not respect the religious views of others.

- Plaintiffs were effectively penalized for not conducting team prayer.

**ii.    Released time allegations (Count II)**

- The Church of Jesus Christ of Latter-Day Saints (LDS Church) operates a seminary across the street from Mountain View.  The School District allows Mountain View students who are LDS Church members to participate in a released time program whereby they

---

[1]The Complaint is somewhat ambiguous as to which of the defendants is the subject of Count I.  A reading of Count I itself discloses that it is directed solely at Goodman, but in the prayer for relief plaintiffs refer to Count I as well as Counts II and III as supporting their request for a declaratory judgment against both defendants.

1  are released from school to the LDS Church seminary five days per
2  week for six periods of the day and then readmitted to the school.

3  • Mountain View is a "locked campus," meaning that the school
4  gates are locked to all students during the school day except for
5  seniors during lunch period.

6  • When LDS Church seminary students are locked outside the
7  school gate, school personnel must open the gate to let them back
8  in.

9  • LDS Church personnel also have a key to the school gate, and the
10 School District allows them to open the gate for seminary students.

11 • The School District does not adequately track the seminary
12 students who leave or reenter campus.

13 **B.    Free speech allegations (Count III)**

14 • During a 2014 softball tournament "hip-hop and other popular
15 music . . . was played and used as expressive speech."[2]  C.R., the
16 daughter of LDS Church member Terry Richardson, found this
17 music offensive to her "religious sensitivities."[3]

18 • During the same tournament, Terry Richardson read expressive
19 speech made by B.H. on Twitter.[4]  Certain LDS members reported
20 B.H.'s tweets to team coach Joseph Goodman.

21 • One of the reasons why plaintiffs were dismissed from the team
22 was because the School District found that they used improper
23 speech during off-campus events.

24 _____

25 [2]Doc. 8 at 7 ¶ 28.

26 [3]*Id.* at ¶ 29.

27 [4]*See PeopleBrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120 EMC, 2013 WL 843032, at *1
28 (N.D. Cal. Mar. 6, 2013) ("Twitter is an online communications platform that lets users share
information through 'tweets' of 140 characters or less.").

1
2
- Plaintiffs were effectively penalized for protected expressive speech.

3  **C.   Due process allegations (Count IV)**

4
5
6
7
8
9
- The School District "has rules and procedures that are supposed to be utilized in the event that a student is to be removed from" the softball team based on charges that the student used improper speech that could be deemed "bullying."[5]  The School District did not comply with these rules when plaintiffs were removed from the softball team.

10  ### III.  STANDARD OF REVIEW

11  Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such
12  a motion, "[a]ll allegations of material fact in the complaint are taken as true and
13  construed in the light most favorable to the nonmoving party."[6]  To be assumed true,
14  the allegations "may not simply recite the elements of a cause of action, but must
15  contain sufficient allegations of underlying facts to give fair notice and to enable the
16  opposing party to defend itself effectively."[7]  Dismissal for failure to state a claim can be
17  based on either "the lack of a cognizable legal theory or the absence of sufficient facts
18  alleged under a cognizable legal theory."[8]  "Conclusory allegations of law . . . are
19  insufficient to defeat a motion to dismiss."[9]

20
21
22
23
_____

24  [5]Doc. 8 at 16 ¶ 82.

25  [6]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

26  [7]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

27  [8]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

28  [9]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[12]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[14]

## IV.  DISCUSSION

### A.  Plaintiffs' Standing

Defendants argue that all three plaintiffs lack standing to challenge the School District's released time policy and that Sidney Ryan lacks standing to obtain declaratory or injunctive relief because she no longer attends school in the District.  "The oft-repeated 'irreducible constitutional minimum of standing' contains" the following three elements: (1) "the plaintiff must have suffered an 'injury in fact,' which is both concrete and particularized, as well as actual or imminent;" (2) "there must be a causal

---

[10]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11]*Id.*

[12]*Id.* (citing *Twombly*, 550 U.S. at 556).

[13]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[14]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

connection between the injury and the conduct complained of;" and (3) "it must be likely that a favorable decision would redress the injury identified."[15]

Relying on *Moss v. Spartanburg County School District Seven*,[16] defendants argue that plaintiffs lack standing to challenge the District's released time policy because they fail to allege that the policy caused them to suffer an actual, particularized injury.[17] The plaintiffs in *Moss* were parents of students at a public high school that allowed students to receive academic credits for off-campus religious instruction offered by private educators.[18] Like the plaintiffs in this case, the *Moss* plaintiffs alleged that the program impermissibly endorsed religion and entangled church and State, in violation of the First Amendment's Establishment Clause.[19] In analyzing their standing to sue, the Fourth Circuit Court of Appeals observed that courts must be cognizant of the unique injuries that Establishment Clause plaintiffs typically suffer, which are often "spiritual" and "value-laden" instead of tangible and economic.[20] Yet, the court cautioned against "efforts to use this principle to derive standing from the bare fact of disagreement with a government policy" where the plaintiffs do not allege that the policy affected them directly in some way.[21]

---

[15]*Sturgeon v. Masica*, 768 F.3d 1066, 1071 (9th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[16]683 F.3d 599 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 623 (2012).

[17]Doc. 12 at 6.

[18]683 F.3d at 601.

[19]*Id.*

[20]*Id.* at 605 (quoting *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1086 (4th Cir.1997); *ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*, 698 F.2d 1098, 1102 (11th Cir.1983)). *See also Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc).

[21]*Moss*, 683 F.3d at 605. *See also Catholic League*, 624 F.3d at 1052 (holding that mere disagreement with the government is insufficient injury, but exclusion or denigration on religious basis is sufficient).

On one hand, the Fourth Circuit held that plaintiff Tillett lacked standing because she did not allege that either she or her child had personal exposure to the release time program, that the program caused them any adverse repercussions, or that the program caused them to alter their conduct in any way.  Thus, Tillett's allegations amounted to "little more than simple disagreement with the wisdom of the School District's policy."[22]  On the other hand, the court held that the Mosses had standing.  Like Tillett's child, Melissa Moss never attended the release time program nor was she harassed for refusing to enroll.  But the court held that she alleged sufficient spiritual injury for three reasons.  First, her father had discussed the program with her and both "came to the view that it was part of a broader pattern of Christian favoritism" on the part of the school and school district.[23]  Second, the Mosses were not Christians, and therefore the defendants' alleged Christian favoritism made them feel like "outsiders" in their community.  And third, the Mosses testified that the program affected their conduct.  Melissa's father volunteered less frequently at the school, and Melissa went to college outside of the state because of their perceived outsider status.[24]

Plaintiffs fail to address defendants' argument that they lack standing to challenge the released time policy.[25]  Indeed, they lack standing because they fail to allege that the released time policy affected them directly in any way.  None of the plaintiffs allege personal exposure to the release time program, that the program caused them any adverse personal repercussions, or that it caused them to alter their conduct.  Count II of plaintiffs' complaint will be dismissed.[26]

---

[22]*Moss*, 683 F.3d at 606.

[23]*Id.* at 607.

[24]*Id.*

[25]Doc. 14 at 5-7.

[26]In addition, plaintiff Sidney Ryan lacks standing to obtain declaratory and injunctive relief.  "It is well settled that once a student graduates, he no longer has a live case or

**B.      Plaintiffs' Section 1983 Claims Against the School District**

Defendants argue that Counts I, III, and IV of the complaint fail to the extent they are directed at the School District because plaintiffs do not sufficiently allege that the School District is liable for any alleged constitutional violations under Section 1983. Section 1983 prohibits "every person" acting under color of law from violating the constitutional or legal rights of others.[27]  In *Monell v. Department of Social Services of New York*,[28] the Supreme Court held that the word "person" in Section 1983 includes municipalities and other governing bodies, such as school districts.  A school district may be held liable under *Monell* pursuant to any of the following three theories: "(1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'"[29]

Defendants argue that plaintiffs fail to allege that their constitutional rights were violated by any specific School District policies, customs, or practices.[30]  With regard to Count I, plaintiffs agree—they assert that Count I is only directed at Goodman personally.[31]

Regarding Count III, plaintiffs conclude without explanation that "the facts as alleged if proven can support liability sue [sic] to those practices and usages."[32]    Count

---

controversy justifying declaratory and injunctive relief against a school's action or policy."  *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000).

[27]42 U.S.C. § 1983.

[28]436 U.S. 658, 690 (1978).

[29]*Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)).

[30]Doc. 12 at 10.

[31]Doc. 14 at 14.  This removes the ambiguity recognized above in note 1; Count I does not plead a claim against the School District.

[32]*Id*. at 15.

III alleges that defendants penalized plaintiffs by removing them from the softball team because of protected speech.[33]  Plaintiffs assert that this act subjects the District to liability, but fail to specify any basis for this liability.  In other words, plaintiffs neither allege in their complaint nor argue in their opposition that a School District employee removed plaintiffs from the team pursuant to an official District policy, or that a District employee was acting pursuant to a longstanding practice or custom, or that a District employee was acting as a final policymaker.  Without one of these allegations, the complaint merely pleads facts that are consistent with the District's liability.  Count III will be dismissed as it relates to the School District.

Plaintiffs fail to address defendants' argument with regard to Count IV, which alleges that the School District "did not comply with its own rules to comply with the Plaintiffs [sic] due process rights."[34]  As with Count III, plaintiffs failure to specify any basis for municipal liability dooms their claim.  Count IV will be dismissed as it relates to the School District.

**C.   Claims Against Goodman–Qualified Immunity**

Goodman argues that he is entitled to qualified immunity regarding plaintiffs' claims against him (Counts I, III, and IV).[35]  In determining whether a government official is entitled to qualified immunity the court must consider "(1) whether, taking the facts in the light most favorable to the nonmoving party, the government official's conduct violated a constitutional right, and (2) whether the right was clearly established

---

[33]Doc. 8 at 15 ¶ 74.

[34]*Id*. at 16 ¶ 84.

[35]Doc. 12 at 10-13.

at the time of the alleged misconduct."[36]  "If the answer to either is 'no,' the official
cannot be held liable for damages."[37]

### 1.     Count I

Goodman argues that Count I fails both prongs of the qualified immunity test.
First, "private student prayer" is not unconstitutional; second, plaintiffs' constitutional
rights were not clearly established at the time of Goodman's alleged misconduct.
Goodman's first argument mischaracterizes the complaint.  The complaint alleges that
Goodman is liable for more than private student-led pre-game prayer; the complaint
alleges that Coach Goodman, a government official, appointed certain students as
"prayer leaders"[38] and later issued a directive at the behest of LDS Church members
that penalized plaintiffs for not conducting a team prayer.[39]  Goodman's argument does
not address the constitutionality of either of these alleged actions.

Turning to Goodman's second argument, when determining whether a
defendant's conduct violated clearly established federal law, courts look to whether the
state of the law at the time gave the defendant "fair warning" that his conduct was
unlawful.[40]  "Qualified immunity gives government officials breathing room to make
reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or
those who knowingly violate the law.'"[41]  In order for an official to be liable, the "contours
of the right must be sufficiently clear that a reasonable official would understand that

---

[36]*C.F. ex. rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 986 (9th Cir. 2011).

[37]*Id.*

[38]Doc. 8 at 6 ¶ 18.

[39]*Id.* at 9 ¶ 38.

[40]*Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[41]*Stanton v. Sims*, 134 S. Ct. 3, 4–5 (2013) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011)).

what he is doing violates that right."[42]  This does not require a plaintiff to point to a previous case holding that the exact same conduct was unlawful; it requires a showing that in the light of pre-existing law the unlawfulness of the conduct was apparent.[43] Whether the state of the law was clearly established is a question of law to be determined by the court in the absence of genuine issues of material fact.[44]

Plaintiffs argue that Goodman's promotion of student-led prayer at a public school sporting event was clearly unconstitutional in light of the Supreme Court's decision in *Santa Fe Independent School District v. Doe*.[45]  *Santa Fe* involved a high school's practice of allowing a student to deliver a prayer over the public address system before each varsity football game.[46]  The Supreme Court found that these prayers were government speech endorsing religion, which the Establishment Clause forbids, because the "degree of school involvement" made it clear that the prayers bore the "'imprint of the State.'"[47]  The court based this finding on the fact that the prayer was delivered "as part of a regularly scheduled, school-sponsored function conducted on school property," over the school's public address system that was subject to school control, and in a setting that was "clothed in the traditional indicia of school sporting events," which included (among other things) school uniforms that bore the school's name, a field with the school's name written on it, and a crowd adorned with school colors.[48]  This was unconstitutional because it would cause an objective Santa Fe High

---

[42]*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[43]*Id*.

[44]*Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993).

[45]530 U.S. 290 (2000).

[46]*Id*. at 294.

[47]*Id*. at 305 (quoting *Lee v. Weisman*, 505 U.S. 577, 590 (1992)).

[48]*Id*. at 307-08.

School student to "unquestionably perceive the inevitable pregame prayer as stamped with her school's seal of approval."[49]

Goodman argues that he is entitled to qualified immunity on Count I because "[t]he law on student prayer is not established with sufficient clarity."[50]  The prayer at issue in this case, he argues, is "far from the prayer found unconstitutional" in *Santa Fe* because this case does not involve a public broadcast, District endorsement, a captive audience, or official oversight of the prayers.[51]  Further, he argues, *Santa Fe* did not clearly establish that "voluntary, private, student-led team prayer before softball games" is unconstitutional.[52]  In sum, Goodman argues that he is entitled to qualified immunity because the law regarding "the intersection of public schools and religion is far from clearly established."[53]

Goodman's argument that government officials are entitled to blanket qualified immunity in cases involving student prayer is untenable.  Even if defining the contours of the intersection between one student's First Amendment right to free speech and another student's First Amendment Establishment Clause rights requires courts and government officials to navigate a "legal labyrinth,"[54] "[i]t is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise . . . ."[55]  Thus, assuming the truth of plaintiffs' allegations and drawing all inferences in their favor, the court cannot conclude

---

[49]*Id.* at 308.

[50]Doc. 12 at 11.

[51]*Id.*

[52]Doc. 17 at 4.

[53]*Id.* at 2.

[54]*Nurre v. Whitehead*, 580 F.3d 1087, 1090 (9th Cir. 2009).

[55]*Lee*, 505 U.S. at 587.

that disciplining a student for not conducting a religious exercise was not clearly
unconstitutional.  Goodman's motion with respect to Count I will be denied.[56]

### 2. Count III

Count III alleges that plaintiffs were dismissed from the softball team in part
because of B.H.'s tweets, as well as certain music that was played at a softball
tournament, both of which LDS Church members found offensive.  As with Count I,
Goodman argues that Count III fails both prongs of the qualified immunity test.  First, he
argues that Count III fails to allege a constitutional violation because a school may
regulate offensive speech and playing music "to get in the zone" is not expressive
speech.  And second, Goodman argues that he is entitled to qualified immunity
because he reasonably believed that plaintiffs' conduct "posed a substantial disruption
and was not appropriate in the school setting" and reasonably believed that plaintiffs'
music was not protected, expressive speech.[57]

Turning to Goodman's first argument, Goodman cites no authority to support his
assertion that playing music to "get in the zone" is unprotected by the First Amendment
because it is not intended to convey a message.  This argument lacks merit.  Music is
protected by the First Amendment regardless of whether it contains an overt
message—even instrumental music is protected.[58]  Thus, the symbolic speech case

---

[56]See Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001) ("[A] Rule 12(b)(6)
dismissal is not appropriate unless we can determine, based on the complaint itself, that
qualified immunity applies.").

[57]Doc. 12 at 12.

[58]See Cinevision Corp. v. City of Burbank, 745 F.2d 560, 567 (9th Cir. 1984) ("[I]f the
[City Council] passed an ordinance forbidding the playing of rock and roll music . . ., they would
be infringing a First Amendment right . . . even if the music had no political message—even if it
had no words—and the defendants would have to produce a strong justification for thus
repressing a form of 'speech.'") (quoting Reed v. Village of Shorewood, 704 F.2d 943, 950 (7th
Cir.1983)); id. at 569 ("[C]onstitutional safeguards are not applicable only to musical expression
that implicates some sort of ideological content.  Rather, all—political and
non-political—musical expression, like other forms of entertainment, is a matter of first
amendment concern.").

1  upon which Goodman's argument relies, *Spence v. State of Washington*,[59] is

2  inapposite.  Further, Goodman's argument that schools can regulate disruptive speech

3  relies on the premise that the speech at issue was disruptive—a fact that is neither

4  alleged in the complaint nor one that can be inferred in the context of a Rule 12(b)

5  motion.

6        Turning to his second argument, Goodman relies primarily on *Doninger v.*

7  *Niehoff*, a case where the Second Circuit Court of Appeals held that school officials

8  were entitled to qualified immunity regarding their decision to bar the plaintiff from

9  wearing a t-shirt that the defendants thought would cause a disruption at a school

10 assembly.[60]  After reviewing the record at summary judgment, the court concluded that

11 under the circumstances "reasonable school officials could disagree about the potential

12 for a substantial disruption of the assembly as a result of permitting students to wear

13 the t-shirts inside."[61]  *Doninger* is distinguishable because it was decided at summary

14 judgment, not pursuant to Rule 12(b).  Here, the complaint does not describe the music

15 that was played at the tournament, the content of B.H.'s tweets, or any facts showing

16 how either could be considered objectionable.  Given the paucity of detail, it is

17 impossible for the court to determine whether Goodman reasonably believed that

18 plaintiffs' conduct was not constitutionally protected.  Goodman's motion will be denied

19 with respect to Count III.

20        **3.    Count IV**

21        In pertinent part, Count IV alleges that Goodman violated plaintiffs' due process

22 rights by not following School District rules and procedures when plaintiffs' were

23 disciplined for bullying.  Goodman argues that even if he failed to follow these rules and

24

25        [59]418 U.S. 405, 405 (1974) (involving flag with peace symbol attached to it).  *See also*
*Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061 (9th Cir. 2010) (holding that tattoos,

26 the tattooing process, and the business of tattooing are each purely expressive speech).

27        [60]642 F.3d 334, 355-56 (2d Cir. 2011).

28        [61]*Id*. at 356.

1  procedures, plaintiffs do not have a constitutionally protected interest in participating in
2  interscholastic sports or in protecting their reputations.[62]  Plaintiffs respond by asserting
3  that the complaint does not allege a constitutional right to participate in athletics.[63]
4  Further, plaintiffs argue that labeling a high school student a "bully" and "broadcasting
5  that allegation, if unfounded, is egregious, unacceptable conduct."[64]  Maybe so.  But
6  plaintiffs fail to respond to Goodman's argument that the due process clause does not
7  protect against reputational harms.[65]  Goodman's motion with respect to Count IV will
8  be granted.  Count IV will be dismissed.

9  ## V.  CONCLUSION

10  Based on the preceding discussion, defendants' motion to dismiss at docket 12
11  is GRANTED in part and DENIED in part as follows:  All Counts against the School
12  District are DISMISSED; Count IV is DISMISSED as to Goodman as well as the School
13  District; and Sidney Ryan's claims for declaratory relief in Counts I and III are
14  DISMISSED.  In all other respects defendants' motion is DENIED. The claims which
15  remain for resolution are plaintiffs' remaining claims against Goodman in Counts I and
16  III.

17  DATED this 5th day of December 2014.

18
19                                                    /s/
20                                          JOHN W. SEDWICK
                                   UNITED STATES DISTRICT JUDGE
21
22
23
24  _____

25  [62]Doc. 12 at 12.

26  [63]Doc. 14 at 12.

27  [64]*Id.* at 13.

28  [65]*See Paul v. Davis*, 424 U.S. 693, 712 (1976).